UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ABDUL-KAHLIF CALHOUN,

        Petitioner,

v.

DOUG WADDINGTON,

        Respondent.

CASE NO. C09-5211RJB/JRC

REPORT AND RECOMMENDATION

Noted for NOVEMBER 13, 2009

The underlying Petition for a Writ of Habeas Corpus has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and 636 (b)(1)(B), and Local Magistrate Judge's Rule MJR3 and MJR4. Petitioner is seeking federal habeas relief, pursuant to 28 U.S.C. § 2254, from state convictions out of Pierce County. Petitioner was convicted of one count of possession of cocaine. The sentence imposed was 24 months.

The sentence runs consecutively to the sentence imposed in <u>State v. Calhoun</u>, Pierce County cause number 05-1-003396-9, where petitioner was found guilty of first degree robbery, first degree burglary, and second degree assault.

REPORT AND
RECOMMENDATION - 1

# FACTS

The Washington State Court of Appeals summarized the facts surrounding the possession of cocaine case and conviction as follows:

## I. UNLAWFUL POSSESSION OF CONTROLLED SUBSTANCE

On April 18, 2005, a security officer at the Golden Lion Motor Inn called police to complain of trespassers who were not registered guests and were refusing to leave room 12. At approximately 1:30 am, Officer Jeremy Vahle responded to the trespassing complaint, approached room 12, and opened the door. Contacting Abdulkahlif Khalif Calhoun in room 12, Vahle arrested him for trespassing. Vahle did not read Calhoun his *Miranda* rights.

Vahle then transported Calhoun to the jail, where he turned Calhoun over to Officer Rodney Halfhill for booking and fingerprinting. As part of the routine booking process, Halfhill took Calhoun into a small room so Calhoun could change into jail clothes and Halfhill could check him for weapons and contraband. After Calhoun removed his clothes, Halfhill observed a cellophane bag containing a white substance in Calhoun's anus and asked Calhoun to remove the bag and to hand it to him. Calhoun complied and handed the bag to Halfhill.

Halfhill turned the bag over to Vahle, who put the bag containing the white substance into evidence at the police station. John Dunn, a forensic scientist at the Washington State Patrol Crime Lab, tested the white substance in the cellophane bag. The substance tested positive for cocaine.

## II. PROCEDURE

On September 7, the State charged Calhoun with one count unlawful possession of a controlled substance. A court-appointed attorney appeared with Calhoun at his arraignment, on September 8. The trial court informed Calhoun that the State had charged him "with unlawful possession of cocaine," and the State gave Calhoun a copy of the charging document. The trial court initially scheduled Calhoun's trial for October 27, 2005.

A. Counsel Substitution, October Pretrial Hearing, and First Continuance.

Calhoun's attorney at arraignment did not further represent him. On September 22, Calhoun's second attorney withdrew, for unspecified reasons, and a third attorney substituted as counsel of record.

At the October 18 pretrial hearing, the State and Calhoun's third attorney agreed to a continuance because it was not in Calhoun's "best interest" to go to trial on this case before he was sentenced on other non-related felony charges.

Defense counsel explained that Calhoun faced a far greater sentence with an additional sentencing score point on his robbery, assault, and burglary charges than if those charges counted as offender score points for his unlawful possession of a controlled substance sentence. Defense counsel reasoned that Calhoun's sentence for all of the charges would be lesser overall, in the event that he received convictions on all of them, if his unlawful possession of a controlled substance went to trial after his other serious charges.

Defense counsel told the trial court that Calhoun did not wish to sign the agreed continuance despite informing him that it was in his best interests. Calhoun then told the trial court:

> The accused at this time does not agree with the prosecutor's statements of the defendant's wishing not to sign the endorsement. The defendant does not wish to dishonor the endorsement. The presentment and the defendant wishes to actually endorse the presentment, if they give the defendant the chance to do so.

Report of Proceedings (RP) (October 18, 2005) at 3. When the trial court asked if Calhoun meant that he wanted to sign the agreed continuance, Calhoun responded affirmatively. Calhoun then wrote his initials on the agreed continuance and wrote "signed under duress and inducement." RP (October 18, 2005) at 4.

### B. November Pretrial Hearing, Request for New Counsel, and Second and ThirdContinuances

On November 7, defense counsel requested another continuance and informed the trial court, "Calhoun has some disagreement with, [the continuance], but I'm making that decision, and I believe that it is in his best interests." RP (November 7, 2005) at 3. Calhoun then told the trial court, "Your Honor, at this time Mr. Calhoun wishes to recues [defense counsel] as the defendant's attorney of record." RP (November 7, 2005) at 5. The trial court told Calhoun that this request would have to be heard at a later time. Defense counsel noted that she was Calhoun's third attorney and asked that his request for reassignment of counsel be heard at a later date so that the Department of Assigned Counsel could be present.

Because Calhoun had previously written "signed under duress and inducement" on his last continuance document, the trial court asked him, "What threat, duress, or inducement are you under?" Calhoun replied that he "[wa]s in confinement" and that his defense counsel had not filed "certain motions and documents in the defendant's behalf." RP (November 7, 2005) at 6.

The trial court granted the requested continuance. On December 14, 2005, the trial court granted another continuance at the request of Calhoun's counsel.

### C. Fourth Counsel Appointed

REPORT AND
RECOMMENDATION - 3

On January 24, 2006, Calhoun's counsel asked to withdraw because Calhoun had filed a bar complaint against her, she needed to respond to the bar complaint, and Calhoun was refusing to discuss the merits of the case with her. The trial court allowed Calhoun's third attorney to withdraw and appointed new counsel, Calhoun's fourth defense attorney.

### D. Self-representation and Standby Counsel

On May 9, during a pretrial hearing, Calhoun told the trial court, "I have waived [defense counsel] as the attorney of record on numerous occasions." RP (May 9, 2006) at 4. When the trial court asked Calhoun if this meant he wanted to waive counsel, Calhoun replied, "Well, Your Honor, at this time I request that you enter a judicial determination and rule on the fact that I intelligently, knowingly and voluntarily waive [defense counsel] as the assigned counsel and the assignment of a lawyer, in fact." RP (May 9, 2006) at 4-5. The trial court then asked Calhoun if this meant that he wanted new counsel appointed. Calhoun responded that he wanted standby counsel appointed, he objected "to being labeled pro se," and he wanted the trial court to use the term "self-representation." RP (May 9, 2006) at 5.

The trial court asked Calhoun whether he had studied law. Calhoun replied, "Your Honor, I study law from 12 to 4 daily in my abode." RP (May 9, 2006) at 8. The court then asked whether Calhoun had attended a law school. Calhoun answered, "I cannot affirm that." RP (May 9, 2006) at 8. The court inquired whether Calhoun had ever represented himself in a criminal action. Calhoun responded, "I'm representing myself here today." RP (May. 9, 2006) at 8. The trial court then asked,

> Do you understand that if you're found guilty of the unlawful possession of a controlled substance that you could be sentenced to incarceration in the Department of Correction probably for a number of years and have significant fines on top of that?

RP (May 9, 2006) at 9. Calhoun answered, "I understand your assessment, yes." RP (May 9, 2006) at 9.

The prosecutor interjected, stating,

> Your Honor, just for Mr. Calhoun's information, currently his offender score stands at a 4 depending on the outcome of several pending cases. That could go up by the time this gets to trial, with a minimum of 6 to 18 months. If his range goes up two points to a six, he'll be looking at 12 plus to 24.

RP (May 9, 2006) at 9. The court told Calhoun, "So you're looking up at up to two years in prison. Are you familiar with what we call the Rules of Evidence?" RP (May 9, 2006) at 9. Calhoun replied, "I have a notice, the Rules of Evidence, yes. The book, I don't have a copy myself."RP (May 9, 2006) at 9. The trial court asked the question again,. "Are you familiar with the Rules of Evidence?"RP (May 9, 2006) at 9. Calhoun responded, "Correct." RP (May 9, 2006) at 9.

When the trial court asked Calhoun if he understood what could and could not be admitted at trial, Calhoun responded,

> Yes. I have an understanding of that, and that's why I request standby counsel so they will make themselves readily available so that we may determine an affirmative defense in this matter.

RP (May 9, 2006) at 10.

When the trial court asked if Calhoun if he was familiar with the Rules of Criminal Procedure, Calhoun replied, "Yes." The trial court pointed out to Calhoun that he had not demonstrated in the past week that he understood the Rules of Criminal Procedure governing criminal trials. Calhoun insisted that he understood the Rules of Criminal Procedure. The trial court then asked Calhoun, "And you understand that you're going to be held to the same standard of any other counsel in this court if you are assisted by standby counsel and try to represent yourself?" RP (May 9, 2006) at 10. Calhoun replied, "Yes." RP (May 9, 2006) at 10.

The trial court asked Calhoun,

> In light of the penalties that you might suffer, if you're found guilty and in light of all the difficulties in representing yourself, is it still your desire to represent yourself and give up your right to be represented by a lawyer?

RP (May 9, 2006) at 10-11. Calhoun responded, "I adamantly stand on my right to self-representation." RP (May 9, 2006) at 11. The court asked, "Is this a voluntary decision on your part?" RP (May 9, 2006) at 11. Calhoun replied, "Voluntarily, knowingly, and intelligently made." RP (May 9, 2006) at 11. The trial court then made a finding that Calhoun had "knowingly and voluntarily waived the right to counsel," and it appointed standby counsel to assist Calhoun in his defense, Calhoun's fifth defense attorney. RP (May 9, 2006) at 11.

REPORT AND
RECOMMENDATION - 5

### E. Trial

On August 3, Calhoun brought a pretrial CrR 3.5 motion to suppress his custodial statements. The State stipulated that it would not introduce any of Calhoun's statements during trial.

Calhoun's trial began on August 3. The jury heard the testimonies of Officer Vahle, Officer Halfhill, and the State's forensic scientist. The jury found Calhoun guilty as charged.

### F. Sentencing

The trial court sentenced Calhoun to a standard range sentence of 24 months. The State argued that because Calhoun had committed the current crime while the other charges were pending and he was under conditions of release in another felony drug case, the trial court should order the current sentence to run consecutively to his unrelated assault, burglary, and robbery sentences imposed in June 2006. The trial court agreed with the State, imposed the current standard range 24-month sentence, and ran it consecutively to Calhoun's June 2006 sentences.

(Dkt. # 23, Exhibit 2).

## **PROCEDURAL BACKGROUND**

Petitioner filed a direct appeal arguing his waiver of counsel was not knowingly made and that running his sentence consecutively violated the equal protection clause (Dkt. # 23, Exhibit 3). The Washington State Court of Appeals affirmed the conviction and sentence (Dkt. # 23, Exhibit 2). A motion for discretionary review with the Washington State Supreme Court was filed which raised the following grounds for review:

> 1. In State v. Hahn, [106 Wn.2d 885, 900-901, 726 P.2d 25 (1986)] this Court held that, when a defendant waives his constitutional right to assistance of counsel, the trial court must, at a minimum, ensure he is made aware of the dangers and disadvantages of self-representation. This requirement was also stated in City of Bellevue v. Acrey, [103 Wn.2d 203, 691 P.2d 957 (1984)] which held that the record must show that a defendant is made actually aware of the risks of self-representation in order for the waiver to be valid.
>
> In this case, the trial court did not inform Mr. Calhoun that he was more likely to get convicted if he represented himself, would be better off with counsel,

would not have the court's assistance in representing himself, and would not be allowed to change his mind and assert his right to counsel later.

Should review be granted under RAP 13.4(b)(3) to address whether a defendant can knowingly, voluntarily and intelligently waive his constitutional rights to counsel without being informed of these crucial dangers and disadvantages of waiving those rights and of the risks of self-representation?

Further, if such information is necessary in order for a defendant to be made sufficiently aware of the dangers and disadvantages as required, should review be granted under RAP 13.4(b)(1) based on the apparent conflict between the decision in this case and those in Hahn and Acrey?

2. In Brewer v.Williams, [430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977)] and In re Det. Of Turay, [ 139 Wn.2d 379, 396, 986 P.2d 790 (1999), cert. denied, 531 U.S. 1125 (2001)] the U.S. Supreme Court and this Court recognized a strong presumption against waiver of the right to counsel. Should review be granted under RAP 13.4(b)(1) and (3) where the court of appeals decision failed to apply that presumption?

3. RCW 9.94A.589(3) authorizes a trial court to depart from the statutory presumption that a sentence will be served concurrently by ordering it to be served consecutively, without requiring the court to give or even have a permissible reason. Should review be granted under RAP 13.4(b)(3) to address whether the statute violates the state and federal constitutional rights to equal protection by allowing the court to treat similarly situated individuals differently?

Review was denied March 3, 2009 (Dkt. # 23, Exhibit 7). This habeas corpus petition followed and petitioner raises four grounds for review:

1. DEPRIVATION OF MR. CALHOUN'S RIGHT TO THE ASSISTANCE OF COUNSEL DURING THE PRELIMINARY STAGE, TRIAL COURT STAGE AND SENTENCING STAGE CONTRARY TO THE U.S. CONSTITUTION. (Emphasis in original).

2. Whether the statute under which Mr. Calhoun's sentence was ordered to run consecutive, RCW 9.94A.589(3), violates his rights to equal protection under the law.

3. Whether the Lakewood Police Officer Jeremy Vahle failure to read Mr. Calhoun the Miranda warnings at the time of arrest, while taking him into custody violated the Fifth and Fourteenth Amendments of the U.S. Const.

4. Illegal Search and Seizure of Mr. Calhoun.

REPORT AND
RECOMMENDATION - 7

(Dkt. # 11).

Respondent has filed an answer and argues the first two claims are exhausted, and even though the last two claims are unexhausted they may be denied as a matter of law. This court agrees with respondent and recommends the petition be DENIED.

## **EVIDENTIARY HEARING NOT REQUIRED**

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing in this court shall not be held unless the applicant shows that: (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, this court concludes that there is no reason to conduct an evidentiary hearing.

## **DISCUSSION**

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United

States." 28 U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for mere errors of state law. Estelle v. McGuire, 502 U.S. 62 (1991); Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984);

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

A.  *Exhaustion.*

In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly presented at every level of appeal. Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir. 1992). A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of prisoners' federal rights. Duncan v. Henry, 513 U.S. 364 (1995). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. Id, *citing* Picard v. Connor, 404 U.S. 270 (1971) and Anderson v. Harless, 459 U.S. 4 (1982). Respondent correctly notes that a petition may be denied on the merits despite a failure to exhaust. See, 28 U.S.C.A § 2254 (b) (2).

Respondent concedes the first two issues raised in the petition are exhausted, but argues they are without merit. Further, respondent argues the second two issues may be denied on the merits despite failure to exhaust. This court agrees.

B. *Right to counsel and wavier of the right*.

It is well established that a criminal defendant has a right to counsel under the Sixth Amendment to the United States Constitution. <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963). However, a criminal defendant also has the right under the Sixth Amendment to refuse counsel and to represent himself. When a defendant makes an unequivocal request to represent himself, the request cannot be denied if it is made knowingly and intelligently. <u>Faretta v. California</u>, 422 U.S. 806, (1975). Here, both the trial court and the Washington State Court of Appeals determined Mr. Calhoun made a knowing and intelligent waiver of his right to counsel. Those findings are presumed correct unless rebutted by clear and convincing evidence.

The Washington State Court of Appeals considered this ground for relief and held:

> In order to exercise the right to self-representation, a defendant's request must be unequivocal, knowing, voluntary, intelligent, and timely. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 208-09, 691 P.2d 957 (1984); *State v. Vermillion*, 112 Wn. App. 844, 851, 51 P.3d 188 (2002), *review denied*, 148 Wn.2d 1022 (2003). Courts should indulge every reasonable presumption against finding that a defendant has waived the right to counsel. *State v. Chavis*, 31 Wn. App. 784, 789, 644 P.2d 1202 (1982).
>
> Calhoun argues that the trial court's waiver of counsel colloquy with him did not adequately warn him about the risks of self-representation. A colloquy is not required to show knowing, voluntary, and intelligent waiver of counsel. Nonetheless, our Supreme Court "strongly recommend[s]" a colloquy between the trial court and defendant as the best means of assuring that the defendant understands the risks of self-representation. *Acrey*, 103 Wn.2d at 21.1. Such colloquy,
>
>> [a]t a minimum, should consist of informing the defendant of the nature and classification of the charge, the maximum penalty upon conviction and that technical rules exist which will bind defendant in the presentation of his case.
>
> *Acrey*, 103 Wn.2d at 211.
>
> Here, the trial court did not ask some of the questions that prior Washington case law recommended. [Footnote 5 omitted] For example, as Calhoun notes, the trial court did not ask if he knew that the trial court would not

assist him in his defense, or that once he waived his right to counsel, he would not automatically regain the right to counsel. Although informative, neither of these questions are required to show a knowing, voluntary, and intelligent waiver of counsel. *See Acrey*, 103 Wn.2d at 211.

Even though the trial court did not ask these two specific questions, it did inform Calhoun (1) about the charges against him, (2) about the sentence he faced if convicted, (3) that the Rules of Evidence would apply at his trial, and (4) that the Rules of Criminal Procedure governed his proceedings. In addition, the trial court told Calhoun that he would be held to the same standard as an attorney. And the trial court interrogated Calhoun about whether he truly understood these rules and would be able to apply them at trial. Calhoun assured the court that he had experience and understood the rules. Contrary to Calhoun's assertions on appeal, the trial court told Calhoun that it did not believe he had demonstrated that he understood the Rules of Criminal Procedure. Calhoun responded that he was requesting appointment of standby counsel to help him in case he needed it.

Finally, the trial court asked Calhoun, "In light of the penalties that you might suffer, if you're found guilty and in light of all the difficulties in representing yourself, is it still your desire to represent yourself and give up your right to be represented by a lawyer?" RP (May 9, 2006) at 10-11. Calhoun replied, "I adamantly stand on my right to self-representation." RP (May 9, 2006) at 11.

The trial court's extensive colloquy with Calhoun shows that it more than adequately met the requirements for informing Calhoun about the nature and classification of the charge against him, the maximum penalty upon conviction, and that there were technical rules that bound Calhoun in the presentation of his case. Acrey, 103 Wn.2d at 211. We hold, therefore, that Calhoun knowingly, voluntarily, and intelligently waived his right to counsel under either standard of review.

(Dkt. # 23, Exhibit 2 pages 9 to 12).

The record in this case shows a lengthy colloquy between the court and Mr. Calhoun. Despite the court warning Mr. Calhoun he would be held to the standard of an attorney and despite being told the rules would not be relaxed for him Mr. Calhoun adamantly and unequivocally demanded he be allowed to represent himself. His demand was made knowing he faced a sentence possibly as long as two years (Dkt. # 23, Exhibit 2 pages 8 to 12).

The state court decision upholding the conviction and sentence is well supported by the record. In order to obtain relief petitioner needs to show the state court's decision resulted in a

REPORT AND
RECOMMENDATION - 11

decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court or that the state court decision is based on an unreasonable determination of the facts in light of the evidence presented to the state courts. Petitioner fails to meet this burden and this ground for relief is without merit.

C. *Running the sentence consecutively*.

The last reasoned opinion of the state court on this matter is found in opinion denying direct appeal filed by the Washington State Court of Appeals. Petitioner argued the statute that gave the sentencing judge the discretion to run his sentence consecutive to other sentences, RCW 9.94A.589(3), is unconstitutional because it creates a class of persons who are not treated equally. This was a case of first impression for the state court.

The Washington State Court of Appeals held:

> We review constitutional challenges de novo. *State v. Blilie*, 132 Wn.2d 484, 489, 939 P.2d 691 (1997). The equal protection clause of the U.S. Const. amend XIV, § 1 requires that the persons similarly situated with respect to a legitimate purpose of the law be similarly treated. *State v. Shawn P.*, 122 Wn.2d 553, 559-60, 859 P.2d 1220 (1993). A defendant must establish membership in a class before we will engage in equal protection scrutiny, *State v. Handley*, 115 Wn.2d 275, 290, 796 P.2d 1266 (1990).
>
> Calhoun challenges RCW 9.94A.589(3) which provides:
>
> Subject to subsections (1) and (2) of this section, whenever a person is sentenced for a felony that was committed while the person was not under the sentence for conviction of a felony, the sentence shall run concurrently with any felony sentence which has been imposed by any court in this or another state or by a federal court subsequent to the commission of the crime being sentenced unless the court pronouncing the sentence expressly orders that the be served consecutively.
>
> Thus, when a defendant commits a felony while *not* under sentence for a previous felony, the trial court has discretion to run his sentence concurrently with or consecutively to a previously imposed felony sentence. Calhoun argues that this discretion "creates a class of people who are ordered to serve their sentences

REPORT AND
RECOMMENDATION - 12

consecutively, under RCW 9.94A.589 (3), rather than concurrently, as presumed under the same statute." Br. of Appellant at 26. This argument fails.

The State is correct that Washington courts have repeatedly upheld the trial court's discretion to impose consecutive sentences under RCW 9.94A.589 (3). *See* Br. of Resp't at 27 (citing *State v. Champion*, 134 Wn. App. 483, 140 P.3d 633 (2006), *cert. denied*,128 S. Ct. 510 (2007); *State v. Smith*, 74 Wn. App. 844, 875 P.2d 1249 (1994), *review denied*,125 Wn.2d 1017 (1995); *State v. Linderman*, 54 Wn. App. 137, 772 P.2d 1025,*review denied*,113 Wn.2d 1004 (1989); *State v. Kern,* 55 Wn. App. 803, 780 P.2d 916 (1989), *review denied*,114 Wn.2d 1003 (1990). But Calhoun is also correct that whether RCW 9.94A.589 (3) violates a defendant's equal protection rights is an issue of first impression.

As the State notes, statutes that authorize varying punishments for the same criminal act generally do not violate equal protection rights. *See Williams v. Illinois*, 399 U.S. 235, 243, 90 S. Ct. 2018, 26 L.Ed.2d 586 (1970) (no requirement that two persons convicted of the same offense receive identical sentences); *State v. Caldwell*, 47 Wn. App. 317, 320, 734 P.2d 542, *review denied*, 108 Wn.2d 1018 (1987) (it is "well settled" that statutes that authorize varying punishments for the same criminal act do not violate equal protection). Moreover, there is a rational basis for any disparate treatment under RCW 9.94A.589(3) of criminal defendants who commit a series of multiple new separate crimes in more than one jurisdiction. Giving the trial court discretion to run a defendant's new sentence consecutively to his previous sentences, imposed after he committed the new crime, is rationally related to allowing some flexibility within the sentencing guidelines; this flexibility minimizes incidental factors of geographical boundaries and jurisdictions and allows the sentencing court to punish more severely those criminal defendants who have committed a series of separate and distinct crimes. [court's footnote 8. *See* Washington Sentencing Guidelines Comm'n, *Adult Sentencing Manual*§ 9.94A.589 comment, at II-141 (2007) (The purpose of this subsection [RCW 9.94A.589(3) ] is to allow the judge some flexibility within the guidelines in order to minimize the incidental factors of geographical boundaries and jurisdictions).]

We hold, therefore that Calhoun has failed to show a denial of his right to equal protection of the law.

(Dkt. # 23, Exhibit 2, pages 13 to 15).

The Equal Protection clause requires that all persons similarly situated be treated similarly by the government. Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Lee v. Washington, 390 U.S. 333, 334 (1968). The Equal Protection clause does not require equal results, but is designed to guard against class based or racial discrimination. Mr. Calhoun does

REPORT AND
RECOMMENDATION - 13

not allege any racial or class based discrimination. Instead he argues application of the statute creates a class of persons who are being sentenced to longer terms. Persons with longer sentences are not a suspect class.

When a suspect class is not implicated the court must determine whether the alleged discrimination is "'patently arbitrary and bears no rational relationship to a legitimate governmental interest.'" Vermouth v. Corrothers, 827 F.2d 599, 602 (9th Cir. 1987)(quoting Young v. United States Parole Comm'n, 682 F.2d 1105, 1109 (5th Cir.), cert. denied, 459 U.S. 1021 (1982)).

The state court properly applied the rational basis or rational relationship test to the facts and determined Mr. Calhoun's ground for relief was without merit. The court noted that the discretion left to the sentencing judge "some flexibility within the sentencing guidelines; this flexibility minimizes incidental factors of geographical boundaries and jurisdictions and allows the sentencing court to punish more severely those criminal defendants who have committed a series of separate and distinct crimes."

Mr. Calhoun fails to show this holding resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court or that the state court decision is based on an unreasonable determination of the facts in light of the evidence presented to the state courts. Petitioner fails to meet this burden and this ground for relief is without merit.

D.      *Miranda* Warnings.

It is uncontested that the arresting officer did not read Mr. Calhoun the warnings set forth in Miranda v. Arizona, 384 U.S. 436 (1966). These warnings are designed to inform a person facing custodial interrogation that under the protections afforded by the Fifth Amendment they

may not be compelled to be a witness against themselves. Here, there was no custodial interrogation. Further, no statements made by the defendant were admitted or offered against him at his trial. Thus, this ground for relief is without merit. This issue is unexhausted, however an unexhausted petition may be denied pursuant to 28 U.S.C.A § 2254 (b) (2).

  E.  *The Search of Mr. Calhoun at the jail and the seizure of drugs from his person.*

  Mr. Calhoun attempts to raise a Fourth Amendment claim regarding the admission into evidence of the drugs seized from his persons when he was booked into the Jail. While this ground for relief is also unexhausted, it is not cognizable in this petition, and may therefore be denied.

  Where a state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal *habeas* relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at trial. Stone v. Powell, 428 U.S. 465, 494 (1976).

  In Washington, criminal defendants seeking suppression of evidence allegedly seized in an unlawful manner may move to suppress under Washington Criminal Rule 3.6. At the conclusion of the suppression hearing, the trial court is required to enter findings and conclusions. CrR 3.6. Mr. Calhoun was provided an opportunity to suppress the evidence that drugs were found on his person when he was booked into the county jail. He did not avail himself of that opportunity. This ground for relief is not cognizable in a habeas petition.

## **CONCLUSION**

  Based on the foregoing discussion, the Court should DENY this petition. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will

REPORT AND
RECOMMENDATION - 15

1 result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140

2 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to

3 set the matter for consideration on November 13, 2009, as noted in the caption.

DATED this 20th day of October, 2009.

*/s/ J. Richard Creatura*

J. Richard Creatura
United States Magistrate Judge

REPORT AND
RECOMMENDATION - 16